IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE L. SANCHEZ, # R-64344,        ) | |
| )| |
| Plaintiff,        ) | |
| ) | |
| vs.        ) | Case No. 14-cv-275-JPG |
| ) | |
| S.A. GODINEZ, MICHAEL P. ATCHISON, ) | |
| GINA ALLEN, TIMOTHY VEATH,        ) | |
| JIM DILDAY, LORI OAKLEY,        ) | |
| JASON N. HART, and KATHY BAKER,        ) | |
| ) | |
| Defendants.        ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Stateville Correctional Center ("Stateville") on a temporary court writ, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The incidents which gave rise to Plaintiff's complaint took place at Menard Correctional Center ("Menard") where he has been serving an 11-year sentence for aggravated discharge of a firearm and a three-year sentence for unlawful possession of a handgun. Plaintiff claims that his due process rights were violated when he was denied the opportunity to call witnesses at a disciplinary hearing. He was found guilty and punished with 30 days in segregation. This disciplinary action was later expunged, but only after Plaintiff had completed serving his segregation time.

The specifics of Plaintiff's complaint are as follows. On March 29, 2012, Plaintiff was housed in the medium security unit of Menard. He and his cellmate (Smith) were waiting to be allowed out of their cell at 12:00 p.m., Smith for yard and Plaintiff for dayroom (Doc. 1, pp. 6-7). Smith pushed the access button to unlock the cell door and stepped out of the cell too early,

before being called out to join the yard line.  Consequently, when movement of inmates began at the correct time, the cell access button no longer opened the door.  Neither Plaintiff nor Smith was able to attend his out-of-cell activity.

Defendant Kathy Baker (correctional officer) was overseeing the cell area during this time.  Plaintiff asked another inmate (Wiggins) to summon her to his cell (Doc. 1, p. 8).  When she arrived, Smith admitted that he was the one who stepped out of the cell before the yard line was run.  Plaintiff asked if he could be allowed to go to the dayroom since he had not broken any rules, but Defendant Baker refused and threatened to write him a ticket.  Plaintiff protested that he should not be punished when Smith had "taken his weight."  *Id*.

Later that afternoon, Plaintiff was transferred to segregation in the maximum security unit (Doc. 1, p. 9).  Defendant Baker had written him a disciplinary ticket for damage or misuse of property (kicking the cell door when he was not allowed out of the cell) and unauthorized movement (for stepping out of the cell before the yard line was called out) (Doc. 1, pp. 9, 18-19).  Plaintiff immediately returned a copy of the ticket requesting that inmates Smith and Wiggins be called as his witnesses (Doc. 1, pp. 9, 18).

The Adjustment Committee, consisting of Defendants Veath and Hart (correctional officers), met on April 3.  Plaintiff appeared and pled not guilty, explaining that his cellmate had admitted to the rule violation, and Plaintiff had done nothing wrong.  Plaintiff's witnesses were not called.  The Adjustment Committee found Plaintiff guilty of the unauthorized movement charge, but not guilty of the other charge.  Plaintiff was punished with one month of segregation, C-grade, and commissary restriction (Doc. 1, pp. 9, 19).  The summary report of the disciplinary hearing incorrectly stated that Plaintiff had not requested any witnesses.  Plaintiff served the segregation time, was released on April 29, 2012, and was then placed in the maximum security

wing.

Plaintiff filed a grievance over this disciplinary action (Doc. 1. pp. 20-21). On May 3, 2012, Defendant Lori Oakley (grievance officer) recommended that the disciplinary report be expunged and the sanctions be reversed, because of the committee's failure to contact Plaintiff's witnesses or document the reason why this was not done (Doc. 1, p. 22). Defendant Atchison (Menard warden) concurred with this recommendation, and the ticket was in fact expunged on May 9, 2012 (Doc. 1, p. 23). Nonetheless, Plaintiff appealed this favorable outcome, seeking a transfer and monetary compensation for the time he spent in segregation and was subjected to the other sanctions (Doc. 1, pp. 22, 37). On March 7, 2013, that relief was denied by Defendants Allen (IDOC Administrative Review Board) and Godinez (IDOC Director) (Doc. 1, p. 37).

Plaintiff now seeks money damages and injunctive relief for the perceived violations of his Fourteenth Amendment due process rights, and his Eighth Amendment right to be free from cruel and unusual punishment (Doc. 1, pp. 13-16).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. After fully considering the allegations in Plaintiff's complaint, the Court concludes that this action is subject to summary dismissal.

**Fourteenth Amendment Claims**

Because Plaintiff's "conviction" for the March 29, 2012, disciplinary infraction was expunged, the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), does not bar a civil rights claim for damages. *See Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (the ruling

in a prison disciplinary proceeding is a conviction for the purposes of *Heck* analysis). However, Plaintiff's complaint does not support any constitutional claim upon which relief may be granted for the 30 days he unnecessarily spent in segregation.

Under certain limited circumstances, an inmate punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). Those circumstances are not present in the instant case. Plaintiff's procedural due process rights do appear to have been violated in his disciplinary hearing, when his witnesses were not called or interviewed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (to satisfy due process concerns, inmate must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed); *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (disciplinary decision must be supported by "some evidence"). This problem led to the May 2012 decision to expunge the disciplinary infraction for unauthorized movement as well as remove the 30 days of segregation from Plaintiff's record. As a result, Plaintiff ultimately received the process to which he was due, even though his victory came too late to have prevented him from serving the segregation time. Because the disciplinary action was expunged, and for the reasons outlined below, Plaintiff now has no cognizable civil rights claim.

Despite the procedural flaw in the handling of Plaintiff's disciplinary charges, the facts presented do not show that Plaintiff was deprived of a substantive liberty interest when he was made to serve 30 days in segregation. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life."

*Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively brief periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

In Plaintiff's case, he was confined in segregation for only 30 days. That duration is too short to trigger an inquiry into the conditions of his confinement. *See Marion*, 559 F.3d at 697-98. More to the point, Plaintiff raises no complaints whatsoever regarding the conditions in his segregation cell. He takes issue only with the fact that he was moved from a medium security area to a maximum security unit when he was placed in segregation, and may have been kept in

the elevated security area for some time after his segregation ended (Doc. 1, pp. 9, 15-16).  This change in security level, as well as the unwarranted punishment with segregation, appear to be the basis for his Eighth Amendment cruel and unusual punishment claims.  However, the complaint does not support a claim for cruel and unusual punishment.

**<u>Eighth Amendment Claims</u>**

The mere fact that Plaintiff was confined in segregation for a time, even wrongfully, does not violate the Eighth Amendment.  Eighth Amendment scrutiny is triggered only where an inmate is deprived of basic human needs like food, medical care, sanitation, and physical safety.  *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).  In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims.  *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302 (1991).  The objective component focuses on whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society.  *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992).  The condition must result in unquestioned and serious deprivations of basic human needs, or deprive an inmate of the minimal civilized measure of life's necessities.  *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

In addition to showing objectively serious conditions, a plaintiff must also show that the responsible prison official acted or failed to act despite the official's knowledge that the conditions posed a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *see also Wilson*, 501 U.S. at 298; *McNeil,* 16 F.3d at 124.

Here, Plaintiff's complaint mentions not a single objective condition that might suggest an Eighth Amendment violation. Thus, no inquiry is necessary into the subjective component of his conditions claim.

Finally, Plaintiff's reassignment from medium security to a maximum security unit does not violate his constitutional rights. Classifications of inmates implicate neither liberty nor property interests. *See Sandin v. Conner*, 515 U.S. 472 (1995); *Meachum v. Fano*, 427 U.S. 215 (1976). Plaintiff thus has no constitutional claim to maintain a particular security classification. *Moody v. Daggett*, 429 U.S. 78, 88 & n. 9 (1976). Furthermore, "prisoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). The same is true for an inmate's assignment to a particular location within a prison.

To summarize, Plaintiff has failed to state a claim for deprivation of a liberty interest without due process, or for a violation of his right to be free from cruel or unusual punishment. Because no claim is stated against the Defendants who were directly responsible for Plaintiff's punishment with segregation, he likewise cannot maintain a claim against those Defendants who were more tangentially involved by "failing to correct" the actions of others or denying Plaintiff the relief sought in his grievance. This action shall be dismissed with prejudice.

**Disposition**

For the reasons stated above, this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. All Defendants are **DISMISSED** from this action with prejudice.

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal.  *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).  Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike."  A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: March 20, 2014**

*s/ J. Phil Gilbert*
United States District Judge